UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

<u>CASE NO. 9:20-CV-80147-RLR</u>

**JURY TRIAL REQUESTED**

FILED BY ___ L/K ___ D.C.

FEB 03 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

<u>**JANE KOE**</u>, an individual filing pseudonymously
    **Plaintiff**
vs.
<u>**AMAR CHANDER MAINI aliases GALLANTVK, AMARCM4, AMARCM_2, VIKRAM KMS, and VIKRAM KUMAR MANSINGH**</u>, an individual
<u>**GUARANTEED REMOVALS**</u>, a Canadian company
<u>**REPZE**</u>, a fraudulent LLC
<u>**EXPERT REMOVALS**</u>, a fraudulent LLC
<u>**INTERNET REMOVALS**</u>, an Australian company
<u>**MARCA GLOBAL, LLC. d/b/a InternetReputation.com**</u>, a Colorado LLC
<u>**AMARUTU TECHNOLOGY d/b/a KoDDOS**</u>, a Hong Kong limited company
<u>**MINC LAW**</u>, an Ohio Law firm
<u>**KEVIN ANGILERI**</u>, an individual
<u>**RONALD LINCO**</u>, an individual
<u>**MICHAEL SCHERN**</u>, an individual
<u>**JAMES JOHN**</u>, an individual
<u>**JIM BURNS**</u>, an individual
<u>**SCOTT BREITENSTEIN**</u>, an individual
<u>**ARMAN ALI d/b/a D4 SOLUTIONS BD**</u>, an individual
<u>**VIKRAM PARMAR aliases MATT HAMP and MARTIN HORAN**</u>, an individual
<u>**JOHN DOES 1-15**</u>, inclusive,
    **Defendants.**

**PLAINTIFF'S MOTION TO PROCEED UNDER A PSEUDONYM**

NOW COMES the plaintiff, JANE KOE, a law student seeking to proceed pseudonymously, and for her Motion for Leave to File her Complaint Using a Pseudonym, *nun pro tunc*, she asserts as follows:

**FACTUAL BACKGROUND**

Plaintiff, Jane Koe, is domiciled in West Palm Beach, Florida when not attending a dual degree US and UK law school program. She works as a couturier and fine artist painter when not attending school. Her Complaint outlines how her reputation has been damaged, her privacy invaded through the publication and public disclosure of private information by Defendant Amar Chander Maini. Defendant Maini is a con artist catfish based in Mumbai, India who has placed

1

Plaintiff's name and libellous information on dozens of blogs and gripe websites collectively termed Bashing Websites. Plaintiff has spent thousands of dollars on removal fees to Removal Websites, only to discover both Maini and the Bashing Websites themselves are engaged in copying and recopying each post to extort further money out of Plaintiff and other victims. Plaintiff has thus filed a combination lawsuit against Maini and against the Bashing and Removal Websites.

The offending conduct began in July of 2017 after Plaintiff respectfully declined marriage to Defendant Maini on account of him conning her and her family with a false name, false age, false job, false resume, and false credentials. She promptly returned the engagement jewelry and engagement ring to his family via USPS certified mail which had a signature on delivery. Maini did not return the cash and gold dowry to Plaintiff and her family. Maini began a blog in July of 2017 where he began posting libellous information about Plaintiff written in a way to capture SEO attention. Maini connected with Koe's friends, family, work colleagues, classmates, and fashion/artwork clients using imposter social media profiles, registered her for female-seeking-transsexual dating sites and other online services so that she would be bombarded with calls, texts, and inappropriate advances. Maini's lies were given widespread publicity on Bashing Websites and made Koe look like a serial cheater and apathetic and unethical in her academic work, when she is an abstinent virgin and a top ranked student at her school. Maini's anger escalated to unreasonable proportions and he used the expansive reach of the Internet, travelled across country lines, and even solicited and conspired with others to disrupt and compromise Plaintiff's reputation, livelihood, and emotional well-being.

Plaintiff initiated proceedings in Australia as Maini is a citizen of Australia but withdrew the case due to bullying and increasing retaliation from Maini. Maini began sending death threats and posting more regularly with increasing vitriol and frequency when Plaintiff first filed, and as a result she withdrew her case. Plaintiff now is somewhat stronger thanks to support and encouragement from her therapist and is in a position to file again in her home country of the United States and her home district of West Palm Beach, Southern Florida. Maini continues to harass Plaintiff with late night messages and calls from untraceable phone numbers, vandalism of her belongings (including her Bernina and Juki sewing machines and her car), and insulting her parents by calling them horrific names.

This litigation will necessarily involve further publication, discussion of, and parsing of every statement, written post, and act depicting Jane Koe in a negative light. Plaintiff humbly requests this Court for permission to file the matter using a pseudonym for Plaintiff against Amar Chander Maini, Guaranteed Removals, RepZe, Expert Removals, Internet Removals, Marca Global, Amarutu Technology, Minc Law, Kevin Angileri, Ronald Linco, Michael Schern, James John, Jim Burns, Scott Breitenstein, Arman Ali, Vikram Parmar, and John Does 1-15, inclusive for the following:

(1) Fraudulent Misrepresentation
(2) Defamation
(3) Invasion of Privacy
(4) Civil RICO § 1962(c)
(5) Civil RICO § 1962(a)
(6) Civil RICO § 1962(b)
(7) Civil RICO § 1962(d)
(8) Computer Fraud and Abuse
(9) Breach of the Implied Covenant of Good Faith and Fair Dealing
(10) Tortious Interference with Advantageous Business Relationship
(11) Deceptive Trade
(12) Civil Conspiracy.

The Defendants are well aware of Plaintiff's true identity and will not suffer any prejudice in their defense upon service of this action.

## LEGAL ANALYSIS

The Federal Rules of Civil Procedure 10(a) lists that "the title of the complaint must name all the parties" and the Federal Rules of Civil Procedure 17(a) lists that "an action must be prosecuted in the name of the real party in interest." Certain exceptions have been recognized under which parties may access the Courts using fictitious names (e.g., "John Doe," "Jane Koe"). Fictitious names have been permitted to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses. See *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997) and *Doe v. City of Chicago*, 360 F.3d 667, 669-670

(7th Cir. 2004). In both cases, the Court acknowledges its duty to determine whether circumstances "justify the departure from the normal method of proceeding in federal courts."

When weighing whether to permit a party to proceed pseudonymously, Courts consider discretionary factors that include:

(1) Risk of retaliatory physical or mental harm to innocent non-parties. See See *Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89, 96 (D.D.C. 2015) (quoting *Nat'l Ass'n of Waterfront Employers v. Chao*, 587 F. Supp. 2d 90, 99 (D.D.C. 2008)).

(2) The extent to which the identity of the litigant has been kept confidential. *See Doe v. Oshrin*, 299 F.R.D. 100, 103 (D.N.J. 2014).

(3) The magnitude of the public interest in maintaining the confidentiality of the litigant's identity; or whether, because of the subject matter of the litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained. See *Doe v. Cabrera*, 307 F.R.D. 1 (D.D.C. 2014) and *Doe v. Oshrin*, 299 F.R.D. 100 (D.N.J. 2014).

(4) Whether the Plaintiff is particularly vulnerable. See *John Doe v. Trustees of Dartmouth Coll.*, No. 18-CV-690-JD, 2018 WL 5801532, at *3 (D.N.H. Nov. 2, 2018).

(5) Whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities. See *Doe v. Cabrera*, 307 F.R.D. 1 (D.D.C. 2014) and *Doe v. Oshrin*, 299 F.R.D. 100 (D.N.J. 2014).

(6) The undesirability of an outcome adverse to the pseudonymous party and attributable to the party's refusal to pursue the case at the price of being publicly identified. See *Doe v. Cabrera*, 307 F.R.D. 1 (D.D.C. 2014) and *Doe v. Oshrin*, 299 F.R.D. 100 (D.N.J. 2014).

(7) Whether the motivations of the party seeking to proceed pseudonymously, or those opposing the use of a pseudonym, are illegitimate. See *Doe v. Cabrera*, 307 F.R.D. 1 (D.D.C. 2014) and *Doe v. Oshrin*, 299 F.R.D. 100 (D.N.J. 2014).

(8) Whether the Plaintiff risks prosecution for admitting to engage in illegal activity. See *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981).

(9) Possible disclosure by Plaintiff of information of "the utmost intimacy." See *Doe v. Cabrera*, 307 F.R.D. 1 (D.D.C. 2014) and *Doe v. Oshrin*, 299 F.R.D. 100 (D.N.J. 2014).

(10) Risk of injury to Plaintiff if identified. See *Doe v. Cabrera*, 307 F.R.D. 1 (D.D.C. 2014) and *Doe v. Oshrin*, 299 F.R.D. 100 (D.N.J. 2014).

(11) Possible prejudice of Defendants by Plaintiff's use of a pseudonym. See *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996).

(12) Degree of economic harm to the Plaintiff if her identity is known. See *Does I thru XXIII*, 214 F.3d 1058 (9th Cir. 2000).

(13) Whether less drastic means of preserving the Plaintiff's interests are available. See *Doe v. Ind. Black Expo, Inc.*, 923 F. Supp. 137, 140 (S.D. Ind. 1996).

  With regard to the risk of retaliatory physical or mental harm to innocent non-parties, Plaintiff is escaping an abusive and toxic arranged marriage set-up to a con artist catfish named Amar Chander Maini. He has threatened Plaintiff and her diabetic parents to make counter-lawsuits and to sue them and their employees if Plaintiff sues. He has also committed multiple acts of physical violence towards Plaintiff's dog, Champ, including one instance where he tried to murder her dog. Plaintiff is in tremendous fear for her physical safety as Defendant Maini has not stopped despite her sending him multiple cease and desist notices on official letterhead. Plaintiff even retained a solicitor in Australia to send him a cease and desist notice and did not achieve her desired result. He has been relentless in attacking Plaintiff and her family for over two and a half years on end, going so far as to brandish her mother—an accounting professional—a "child abuser" on hundreds of websites, which has already affected her mother's reputation and accounting employment prospects. Plaintiff's mother is now receiving psychological treatment for depression.

  The identity of Plaintiff has remained confidential to date and there is no need for the public to know the identity of Plaintiff. While Plaintiff cannot argue that the case will attract "atypically weak" public interest, as the matters at hand cover internet defamation and are certain to attract at least some public interest, Plaintiff is a patient being treated for depression and it is not in her best interest medically for her identity to be revealed.

  Plaintiff is incredibly vulnerable personally, professionally, and psychologically. She will suffer reputational harm, damage to her career, and hindrance in future legal employment prospects if her true identity is revealed, particularly because this case is sure to receive media attention as it touches on the relevancy of the Communications Decency Act 230 and involves both civil RICO and extortion claims. Such cases invariably attract media attention as these are

relevant and pertinent issues affecting millions of women escaping abusive relationships. But most importantly, Plaintiff will suffer psychological harm if her name is disclosed publicly. Plaintiff is currently undergoing Dialectical Behavior Therapy as a result of the abuse she has faced from Defendant Maini and Cognitive Behavior Therapy as a result of the cyberstalking she has faced from Defendants running Bashing Websites and Removal Websites. After over twenty six suicide attempts in the 2019 year, Plaintiff is at severe risk of another suicide attempt should her name be revealed as it would be detrimental to her progress out of depression and into a healthy mode of life. Prior to meeting Defendant Maini, Plaintiff was a happy, well-adjusted young woman, but meeting him and being abused by him psychologically and emotionally sent her to multiple suicide watches and resulted in traumatic surgeries she is only now recovering from. Plaintiff has been put in such a dire position financially due to the impact of libel about her online affecting her small business that she could not pay the $450,000 retainer fee quoted to her by a top litigation boutique to represent her. As a result, Plaintiff is representing herself. Losing her anonymity will only exacerbate her situation as a young woman just starting her career. In the case of *Doe v. Cabrera*, 307 F.R.D. 1, 6 (D.D.C. 2014), the Court ruled that forcing a litigant who is currently undergoing psychological treatment to reveal their true identity may be detrimental to their progress. Plaintiff has suffered tremendous psychological harm as it is and it has taken tremendous courage for her to bring forth this lawsuit in an attempt to protect herself. In particular, Plaintiff will have to disclose information of "the utmost intimacy" in discovery, including but not limited to records of her suicide attempts, and it is in the best interest of her psychological health that this information be shielded from public consumption.

     Furthermore, compelling Plaintiff to identify her name on every court filing would make the Plaintiff's name available to the public indefinitely. In the age of the Internet, where the Streisand Effect is forever at play, could subject the Plaintiff to further psychological trauma. In the case of *Doe v. Cabrera*, 307 F.R.D. 1, 6 (D.D.C. 2014), the Court determined that litigating in the Plaintiff's name would cause the Plaintiff further psychological harm.

     Finally, Courts have permitted parties to proceed under a pseudonym where the litigation would publicize an allegation, whether true or false, so heinous that it constitutes a "badge of infamy or humiliation in the modern world that its presence should be an automatic ground for concealing the identity of a party to a federal suit." See *Doe v. Blue Cross & Blue Shield United*

*of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997) and see *Doe v. Smith*, 412 F.Supp.2d 944, 945 (C.D. Ill. 2006).

In this case, Plaintiff's suit includes allegations that Defendant Maini created a female-seeking-transsexual dating profile which listed Plaintiff's phone number, physical address, make and model of her car, and place of school, on top of multiple libellous posts on dozens of cheater gripe websites, accusing Plaintiff of heinous acts of fraud. Defendant Maini also accused Plaintiff of "flunking out" of "numerous" universities, having a "colorful history with gigolos," "cheating her way in" to universities, hiring people to "write all her papers and help her get good enough grades to squeak by and graduate," "go[ing] to bars," "cheating with so many men [he] lost count," having a "white fetish," and more.

Plaintiff is an abstinent virgin from a very conservative and traditional Indian family. She graduated at the top of her class of every university she attended, has only kissed one man in her entire life—Maini—has always been a woman of integrity, and has authored numerous books for children and adults, all her own work. As a law student seeking employment as a judicial clerk after graduation, she has been laser focused from day 1 on making the grades to write on to her school's *Law Review* and volunteering at her law school's legal aid clinic. Her ambition is to one day become a media lawyer and work in a large law firm setting. These accusations not only characterize Plaintiff in the wrong light, but also they constitute defamation and libel. Maini cheated on Plaintiff throughout their relationship with strippers and waitresses and conned her family out of a multimillion-dollar dowry. Under no circumstances did Plaintiff ever cross any lines with various suitors who approached her. In fact, Plaintiff even rejected a dinner offer from a handsome young man who was not a con artist, merely because of Maini's obsession with controlling everything about what she wore, ate, read, and spoke. Plaintiff relies on her good name and reputation in school to obtain a federal judicial clerkship and she has big ambitions to make a name for herself in the legal field. These false accusations and despicable acts put Plaintiff in a difficult position to obtain legal employment after law school, which has been an expensive undertaking as Plaintiff has put herself through school by selling her paintings and fashion designs. Defendant Maini and the various extortionist scammers have also published headshots of Plaintiff's state beauty pageant win, where Plaintiff won scholarship money to continue her education, on top of distributing childhood toddler photos of Plaintiff to various

pedophile groups without Plaintiff's knowledge or consent. Plaintiff has written to the FBI and informed them that Maini is in possession of her childhood photographs.

Plaintiff is in tremendous fear that Maini will continue badgering her about her autoimmune disorder and attacking her parents and their employees. He has labelled her a "dirty, filthy skank" in a number of website postings in an attempt to reduce Plaintiff's ability to obtain an arranged marriage to a suitable boy in her caste and subcaste.

The truth or falsity of Maini's accusations and allegations will be a critical component of Plaintiff's defamation action and Maini's defense thereof. Plaintiff's ability to pursue these claims of defamation, invasion of privacy, and fraudulent misrepresentation against Maini, in addition to claims of civil RICO, computer fraud, and more against the Bashing Websites and Removal Websites Maini has placed her on, relies necessarily upon being able to proceed under a pseudonym, at least through discovery. In the case of *Doe v. Smith*, 412 F.Supp.2d 944, 947 (C.D. Ill. 2006), the Court permitted the Plaintiff to proceed anonymously through discovery noting (1) "at this early stage of the litigation, it would be difficult for the plaintiff to do anything more than simply allege in a conclusory fashion that such [exceptional] circumstances exist;" and that (2) anonymity may be warranted where disclosure of her identity would add to her humiliation by admitting it was her on the referenced sex tape.

Plaintiff has been humiliated tremendously by Maini's actions and his placement of her in the middle of an extortion ring during a very stressful time of year for law school. The Southern District has allowed Plaintiffs to proceed anonymously where allegations are of "the utmost intimacy" with leeway for the possibility of revisiting the anonymous designation later on in the litigation process.

In light of these circumstances, with particular emphasis on Plaintiff's current psychological treatment progress and Plaintiff's cultural background, Plaintiff very humbly requests the Court to permit her to proceed anonymously through the completion of discovery. After this point, this issue may be revisited, bearing in mind that revealing Plaintiff's name will severely hinder her progress in therapy.

WHEREFORE, the Plaintiff, Jane Koe, respectfully requests leave to file the attached Complaint at Law, *nunc pro tunc*, against Defendants Amar Chander Maini, Guaranteed Removals, RepZe, Expert Removals, Internet Removals, Marca Global, Amarutu Technology, Minc Law, Kevin Angileri, Ronald Linco, Michael Schern, James John, Jim Burns, Scott

Breitenstein, Arman Ali, Vikram Parmar, and John Does 1-15, inclusive, using a pseudonym. Plaintiff recognizes that the anonymous designation may be revisited at the close of discovery.

RESPECTFULLY SUBMITTED, in West Palm Beach, Florida, this 31st day of January,

/s/ Jane Koe
Jane Koe, a pseudonym
Law Student *Pro Se*
7750 Okeechobee Blvd
Suite 4-481
West Palm Beach, FL 33411
Phone: (929) 400-7746
Email: janekoelitigation@icloud.com

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served in person by paper filing on January 31, 2020 at the West Palm Beach, Southern District of Florida Clerk of Court Office. I have retained the process service firm Diligent Process Services—run by Michelle Abrams—to serve all Defendants on the Service List below. Some Defendants will need to be served using the Hague Convention.

/s/ Jane Koe
Jane Koe, a pseudonym
Law Student *Pro Se*
7750 Okeechobee Blvd
Suite 4-481
West Palm Beach, FL 33411
Phone: (929) 400-7746
Email: janekoelitigation@icloud.com

## SERVICE LIST

Amar Chander Maini aliases gallantvk,
amarcm4, amarcm_2, Vikram KMS, and Vikram
Kumar Mansingh
Unknown Address
Mumbai, India
Email: amarcm@outlook.com
Email: amarchandermaini@gmail.com
Email: vikramkms@outlook.com

Guaranteed Removals
3425 Harvester Road
Suite #200
Burlington, Ontario L7N 3M7
Canada

RepZe
9615 E County Line Road
Suite B#444
Centennial, CO 80112
United States of America
Phone: (970) 458-8143
Email: removal@repze.com

Expert Removals
Unknown Address
United States of America
Phone: (888) 447-4949

Internet Removals
Unknown Street Address
Greenville, SC 29606
United States of America
Email: team@internetremovals.com
Phone: (866) 434-5797

Marca Global, LLC. d/b/a
InternetReputation.com
7100 East Belleview Avenue
Suite 310
Greenwood Village, CO 80111
United States of America

James John
Unknown Address

Kevin Angileri
Unknown Address
Arizona
United States of America

Amarutu Technology
One Island East
Level 23,
18 Westlands Road
Hong Kong, Hong Kong

Minc Law
200 Park Avenue
Suite 200
Orange Village, OH 44122
United States of America

Ronald Linco
Unknown Address
United States of America

Arman Ali d/b/a/ D4 Solutions BD
Unknown Address
Dhaka, Bangladesh

Michael Schern
1640 South Stapely Drive
Suite 132
Mesa, AZ 85204
United States of America

Jim Burns
Unknown
Email: jim@link360inc.com
Phone: (864) 362-2207

Scott Breitenstein
Unknown Address
Ohio
United States of America

Vikram Parmar aliases Matt Hamp and Martin Horan
Unknown Address
India or Bangladesh