**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:20-CV-80147-ROSENBERG/REINHART**

JANE KOE,
     *Plaintiff,*

v.

AMAR CHANDER MAINI, *et al.*,
     *Defendants.*

_____/



FILED BY _____ D.C.

NOV 30 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

**UNOPPOSED MOTION TO PROCEED UNDER A PSEUDONYM**

NOW COMES the plaintiff, JANE KOE, a law student seeking to proceed pseudonymously, and for her Motion for Leave to File her Third Amended Complaint Using a Pseudonym, *nun pro tunc*, she asserts as follows:

**FACTUAL BACKGROUND**

Plaintiff, Jane Koe, is domiciled in West Palm Beach, Florida when not attending a dual degree US and UK law school program. She pays her tuition fees and related networking expenses with classmates by renting out several apartments, working as a couturier, and taking private portrait commissions as a painter. Her Complaint outlines how her reputation has been damaged and her privacy invaded through the publication and public disclosure of private information by Defendant Amar Chander Maini. Defendant Maini is a con artist catfish who divides his time between Sydney, Australia and Mumbai, India. He has placed Plaintiff's name on dozens of blogs and gripe websites collectively termed Bashing Websites. Plaintiff has spent thousands of dollars on removal fees to Removal Websites, only to discover both Maini and the Bashing Websites themselves are engaged in copying and recopying each post to extort further money out of Plaintiff and other victims.

The offending conduct began in July of 2017, months after Plaintiff declined her hand in marriage to Defendant Maini due to him conning her and her family with a false name, false age, false job, false resume, and false credentials. She promptly returned the engagement jewelry and engagement ring to his family via USPS certified mail which required a signature on delivery. In spite of her gesture of goodwill, Maini failed to return a substantial cash and gold dowry to Plaintiff and her family. Maini began a blog in July of 2017 where he began posting libelous information about Plaintiff written in a

way to capture SEO attention.  Maini connected with Koe's friends, family, work colleagues, classmates, and fashion/artwork clients using imposter social media profiles and registered her for female-seeking-transsexual dating sites and other online services so that she would be bombarded with calls, texts, and inappropriate advances.  Maini's lies were given widespread publicity on Bashing Websites and multiple social media pages and made Koe look like a serial cheater and apathetic and unethical in her academics and professional work, when she is an abstinent virgin and a top ranked student with a superb record.  Maini's anger escalated to unreasonable proportions and he used the expansive reach of the Internet, travelled across country lines, and even solicited and conspired with others to disrupt and compromise Plaintiff's reputation, livelihood, and emotional well-being.  Maini has continued this conduct nonstop.  Due to Maini, people who barely know Plaintiff have copied, posted, and spread the libel on countless social media platforms with their networks.  At one point, over 18,000 people were ridiculing Plaintiff with "facts" based on Maini's libel.  Plaintiff had to seek an injunction and GDPR reporting mechanisms to put a stop to the libel spreading in England and Wales.

Plaintiff initiated proceedings in Australia as Maini is a citizen of Australia but withdrew the case due to bullying and increasing retaliation from Maini where he mocked her chronic illness.  Maini lacks good character and he continues to shirk responsibility by failing to hold himself liable and responsible for the tremendous damage he did and continues to do to her and her family.  Maini began sending death threats and posting more regularly with increasing vitriol and frequency when Plaintiff first filed in Australia, and she withdrew her case as a result of him spewing abusive vitriol over a chronic health condition she overcame years ago.  In spite of filing a lawsuit in the United States, Maini has continued posting on dozens of social media websites and nothing has stopped his campaign of terror.  When Plaintiff approached Maini seeking to settle the suit, he proceeded to catfish her yet again by posing as a lawyer in Texas when that lawyer said he has never met Maini let alone represented him.  Maini continues to harass Plaintiff with late night messages and calls from untraceable phone numbers, vandalism of her belongings (including her Bernina and Juki sewing machines and breaking the glass in her car window), and insulting her parents by calling them horrific names.

This litigation will necessarily involve further publication, discussion of, and parsing of every statement, written post, and act depicting Jane Koe in a negative light.  Plaintiff humbly requests this Court for permission to file the Third Amended Complaint using a pseudonym for Plaintiff against Defendant Amar Chander Maini for the following:

  a.  Fraudulent Misrepresentation

    b.  Defamation

    c.  Invasion of Privacy

    d.  Severe Infliction of Emotional Distress

    e.  Computer Fraud and Abuse

    f.  Tortious Interference with Advantageous Business Relationship.

The current roster of Defendants are well aware of Plaintiff's true identity and have not suffered any prejudice in their defense upon service of this action.  Indeed, this Motion is unopposed.

## LEGAL ANALYSIS

The Federal Rules of Civil Procedure 10(a) lists that "the title of the complaint must name all the parties" and the Federal Rules of Civil Procedure 17(a) lists that "an action must be prosecuted in the name of the real party in interest."  Certain exceptions have been recognized under which parties may access the Courts using fictitious names (e.g., "John Doe," "Jane Koe").  Fictitious names have been permitted to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses.  See *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997) and *Doe v. City of Chicago*, 360 F.3d 667, 669-670 (7th Cir. 2004).  In both cases, the Court acknowledges its duty to determine whether circumstances "justify the departure from the normal method of proceeding in federal courts."

When weighing whether to permit a party to proceed pseudonymously, Courts consider discretionary factors that include:

    (1) Risk of retaliatory physical or mental harm to innocent non-parties.  See *Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89, 96 (D.D.C. 2015) (quoting *Nat'l Ass'n of Waterfront Employers v. Chao*, 587 F. Supp. 2d 90, 99 (D.D.C. 2008)).

    (2) The extent to which the identity of the litigant has been kept confidential.  See *Doe v. Oshrin*, 299 F.R.D. 100, 103 (D.N.J. 2014).

    (3) The magnitude of the public interest in maintaining the confidentiality of the litigant's identity; or whether, because of the subject matter of the litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained.  See *Doe v. Cabrera*, 307 F.R.D. 1 (D.D.C. 2014) and *Doe v. Oshrin*, 299 F.R.D. 100 (D.N.J. 2014).

(4) Whether the Plaintiff is particularly vulnerable. See *John Doe v. Trustees of Dartmouth Coll.*, No. 18-CV-690-JD, 2018 WL 5801532, at *3 (D.N.H. Nov. 2, 2018).

(5) Whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities. See *Doe v. Cabrera*, 307 F.R.D. 1 (D.D.C. 2014) and *Doe v. Oshrin*, 299 F.R.D. 100 (D.N.J. 2014).

(6) The undesirability of an outcome adverse to the pseudonymous party and attributable to the party's refusal to pursue the case at the price of being publicly identified. See *Doe v. Cabrera*, 307 F.R.D. 1 (D.D.C. 2014) and *Doe v. Oshrin*, 299 F.R.D. 100 (D.N.J. 2014).

(7) Whether the motivations of the party seeking to proceed pseudonymously, or those opposing the use of a pseudonym, are illegitimate. See *Doe v. Cabrera*, 307 F.R.D. 1 (D.D.C. 2014) and *Doe v. Oshrin*, 299 F.R.D. 100 (D.N.J. 2014).

(8) Whether the Plaintiff risks prosecution for admitting to engage in illegal activity. See *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981).

(9) Possible disclosure by Plaintiff of information of "the utmost intimacy." See *Doe v. Cabrera*, 307 F.R.D. 1 (D.D.C. 2014) and *Doe v. Oshrin*, 299 F.R.D. 100 (D.N.J. 2014).

(10) Risk of injury to Plaintiff if identified. See *Doe v. Cabrera*, 307 F.R.D. 1 (D.D.C. 2014) and *Doe v. Oshrin*, 299 F.R.D. 100 (D.N.J. 2014).

(11) Possible prejudice of Defendants by Plaintiff's use of a pseudonym. See *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996).

(12) Degree of economic harm to the Plaintiff if her identity is known. See *Does I thru XXIII*, 214 F.3d 1058 (9th Cir. 2000).

(13) Whether less drastic means of preserving the Plaintiff's interests are available. See *Doe v. Ind. Black Expo, Inc.*, 923 F. Supp. 137, 140 (S.D. Ind. 1996).

With regard to the risk of retaliatory physical or mental harm to innocent non-parties, Plaintiff is escaping an abusive and toxic arranged marriage set-up to a con artist catfish named Amar Chander Maini. He has threatened Plaintiff and her diabetic parents to make counter-lawsuits and to sue them and their employees if Plaintiff sues. He has also committed multiple acts of physical violence towards Plaintiff's dog, Champ, including one instance where he tried to murder her dog. Plaintiff is in tremendous fear for her physical safety as Defendant Maini has not stopped despite her sending him multiple cease and desist notices on official letterhead. Plaintiff even retained a solicitor in Australia to

send him a cease and desist notice and did not achieve her desired result. He has been relentless in attacking Plaintiff and her family for over two and a half years on end, going so far as to brandish her mother—an accounting professional—a "child abuser" on hundreds of websites, which has already affected her mother's reputation and accounting employment prospects. Plaintiff's mother is now receiving psychological treatment for depression.

The identity of Plaintiff has remained confidential to date and there is no need for the public to know the identity of Plaintiff. While Plaintiff cannot argue that the case will attract "atypically weak" public interest, as the matters at hand cover internet defamation and are certain to attract at least some public interest, Plaintiff is a patient being treated for depression and it is not in her best interest medically for her identity to be revealed.

Plaintiff is incredibly vulnerable personally, professionally, and psychologically. She will suffer reputational harm, damage to her career, and hindrance in future legal employment prospects if her true identity is revealed, particularly because this case is sure to receive media attention as it touches on the relevancy of the Communications Decency Act 230. Such cases invariably attract media attention as these are relevant and pertinent issues affecting millions of women escaping abusive relationships. But most importantly, Plaintiff will suffer psychological harm if her name is disclosed publicly. Plaintiff is currently undergoing therapy as a result of the abuse she has faced from Defendant Maini and she has made excellent progress she hopes to continue. After over twenty six (26) suicide attempts in the 2019 year, and nineteen (19) suicide attempts thus far in the 2020 year, Plaintiff remains at severe risk of another suicide attempt should her name be revealed as it would be detrimental to her progress out of depression and into a healthy mode of life. Prior to meeting Defendant Maini, Plaintiff was a happy, well-adjusted young woman. However, meeting him and being abused by him psychologically and emotionally sent her to multiple suicide watches and resulted in traumatic surgeries for which she is only now recovering; indeed, the Third Amended Complaint includes medical record evidence of her stays in suicide watch due to Maini's abuse. Losing her anonymity will only exacerbate her situation as a young woman at the start of her career.

In the case of *Doe v. Cabrera*, 307 F.R.D. 1, 6 (D.D.C. 2014), the Court ruled that forcing a litigant who is currently undergoing psychological treatment to reveal their true identity may be detrimental to their progress. Plaintiff has suffered tremendous psychological harm as it is and it has taken tremendous courage for her to bring forth this lawsuit in an attempt to protect herself. In particular, Plaintiff will have to disclose information of "the utmost intimacy" in discovery, including

but not limited to records of her suicide attempts, and it is in the best interest of her psychological health that this information be shielded from public consumption.

Furthermore, compelling Plaintiff to identify her name on every court filing would make the Plaintiff's name available to the public indefinitely. In the age of the Internet, where the Streisand Effect is forever at play, could subject the Plaintiff to further psychological trauma. In the case of *Doe v. Cabrera*, 307 F.R.D. 1, 6 (D.D.C. 2014), the Court determined that litigating in the Plaintiff's name would cause the Plaintiff further psychological harm.

Finally, Courts have permitted parties to proceed under a pseudonym where the litigation would publicize an allegation, whether true or false, so heinous that it constitutes a "badge of infamy or humiliation in the modern world that its presence should be an automatic ground for concealing the identity of a party to a federal suit." See *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997) and see *Doe v. Smith*, 412 F.Supp.2d 944, 945 (C.D. Ill. 2006). In this case, Plaintiff's suit includes allegations that Defendant Maini created a female-seeking-transsexual dating profile which listed Plaintiff's phone number, physical address, make and model of her car, and place of school, on top of multiple libelous posts on dozens of cheater gripe websites, accusing Plaintiff of heinous acts of fraud. Defendant Maini also accused Plaintiff of "flunking out" of "numerous" universities, having a "colorful history with gigolos," "cheating her way in" to universities, hiring people to "write all her papers and help her get good enough grades to squeak by and graduate," "go[ing] to bars," "cheating with so many men [he] lost count," having a "white fetish," and more. Plaintiff is deathly allergic to alcohol.

Plaintiff is an abstinent virgin from a conservative, traditional Indian family. She has only kissed one man in her entire life—Maini—has always been a woman of integrity. These libelous accusations not only characterize Plaintiff in the wrong light, but they also constitute defamation and libel. Maini cheated on Plaintiff throughout their relationship with strippers and waitresses and conned her family out of a multimillion-dollar dowry. Under no circumstances did Plaintiff ever cross any lines with various suitors who approached her. In fact, Plaintiff even rejected a dinner offer from a handsome young man who was not a con artist, merely because of Maini's obsession with controlling everything about what she wore, ate, read, and spoke. Plaintiff relies on her good name and to make a name for herself in her chosen professional field. These false accusations and despicable acts put Plaintiff in a difficult position to obtain the results she wants in her professional endeavors, which have been expensive undertakings as Plaintiff has put herself through school. Plaintiff's parents cut her off when

she dropped out of medical school and she has self-funded her education since then. Defendant Maini and the various extortionist scammers published headshots of Plaintiff's state beauty pageant win, where Plaintiff won scholarship money to continue her education, on top of distributing childhood toddler photos of Plaintiff to various pedophile groups without Plaintiff's knowledge or consent. Plaintiff has written to the FBI and informed them that Maini is in possession of her childhood photographs.

She is in tremendous fear that Maini will continue badgering her about her autoimmune disorder and attacking her parents and their employees. He has labelled her a "dirty, filthy skank" in a number of website postings in an attempt to reduce Plaintiff's ability to obtain an arranged marriage to a suitable boy in her caste and subcaste. While several Removal Websites have generously agreed to remove said posts free of charge, Plaintiff still has to pay to get the remainder removed from Scott Breitenstein. Indeed, Maini has continued posting more libel on random social media sites including Quora that have taken tremendous time and effort to remove.

The absolute falsity of Maini's accusations and allegations will be a critical component of Plaintiff's defamation action and Maini's defense thereof. Plaintiff's ability to pursue these claims of defamation, invasion of privacy, and fraudulent misrepresentation against Maini, in addition to related claims, relies necessarily upon being able to proceed under a pseudonym through to trial and even appeal since this will be contentious. In the case of *Doe v. Smith*, 412 F.Supp.2d 944, 947 (C.D. Ill. 2006), the Court permitted the Plaintiff to proceed anonymously through discovery noting (1) "at this early stage of the litigation, it would be difficult for the plaintiff to do anything more than simply allege in a conclusory fashion that such [exceptional] circumstances exist;" and that (2) anonymity may be warranted where disclosure of her identity would add to her humiliation by admitting it was her on the referenced sex tape.

Plaintiff has been humiliated tremendously by Maini's actions and his placement of her in the middle of an extortion ring during a stressful time of year given law school exams and Bar Exam prep in three different countries. The Southern District of Florida has allowed Plaintiffs to proceed anonymously where allegations are of "the utmost intimacy" with leeway for the possibility of revisiting the anonymous designation later on in the litigation process. In light of these circumstances, with particular emphasis on Plaintiff's current psychological treatment progress and Plaintiff's cultural background, Plaintiff very humbly requests the Court to permit her to proceed anonymously through the completion of discovery. After this point, this issue may be revisited, bearing in mind that revealing Plaintiff's name will severely hinder her progress in therapy.

WHEREFORE, the Plaintiff, Jane Koe, respectfully requests leave to remain anonymous, using a pseudonym, for the duration of this lawsuit: trial and appeal.  In accordance with Southern District of Florida Local Rule 7.1(a)(3), Plaintiff has both conferred and attempted to confer with all Defendants prior to filing this Motion.

RESPECTFULLY SUBMITTED, in West Palm Beach, Florida, this 30th day of November, 2020.

DATED this 30th day of November, 2020.

By: _____

Jane Koe, LLM/MBA 2021
Plaintiff *Pro Se*
7750 Okeechobee Blvd., Ste. 4-481
West Palm Beach, FL 33411
United States of America
janekoelitigation@icloud.com
Phone: (929) 400-7746

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served in person by process server on November 30, 2020 at the Southern District of Florida West Palm Beach Clerk of Court Office.  PACER electronic records will be updated in due course and sent to all counsel and parties on record.

**UNITED STATES SERVICE LIST**

Pierre Zarokian, 1201 N. Pacific Ave 103, Glendale CA 91202, United States
Defamation Defenders, LLC., 4845 Pearl East Circle Suite 101, Boulder CO 80301, United States Scott
Breitenstein, 29 Bidleman St, Dayton OH 45410, United States
Web Presence, LLC d/b/a Net Reputation, 150 SW 12th Ave Suite 340, Pompano Beach FL 33069,
United States
Kevin Angileri, 6391 W Shannon Street, Chandler AZ 85226, United States
Michael Schern, 1640 South Stapely Drive Suite 132, Mesa AZ 85204, United States
Minc Law, 200 Park Avenue Suite 200, Orange Village OH 44122, United States
RepZe, 9615 E County Line Road Suite B#444, Centennial CO 80112, United States
Marca Global, LLC. d/b/a InternetReputation.com, 7100 East Belleview Avenue Suite 310, Greenwood
Village CO 80111, United States

**INTERNATIONAL SERVICE LIST**

Amar Chander Maini, 9 Jamberoo Ave, Baulkham Hills, NSW 2153 Australia
Guaranteed Removals, 3425 Harvester Road, Suite #200, Burlington, Ontario L7N 3M7, Canada
Amarutu Technology One Island East, Level 23, 18 Westlands Road Hong Kong, Hong Kong Internet
Removals, 130 Bundall Road, Level 3 Bundall, QLD 4217 Australia
James John, 130 Bundall Road, Level 3 Bundall, QLD 4217 Australia
Jim Burns, 130 Bundall Road, Level 3 Bundall, QLD 4217 Australia
Vikram Parmar aliases Matt Hamp and Martin Horan Unknown Address, Bangladesh
Ronald Linco - send registered (2), Level 23, One Island East, 18 Westlands Road, Quarry Bay, Hong
Kong and P.O. Box 8016, Mont Fleuri, Victoria, Mahe, Seychelles
Matt, Expert Removals, P.O. Box 8016, Mont Fleuri, Victoria, Mahe, Seychelles

By: _____
Jane Koe, candidate for JD/LLM
Plaintiff *Pro Se*
7750 Okeechobee Blvd., Ste. 4-481
West Palm Beach, FL 33411
United States of America
janekoelitigation@icloud.com
Phone: (929) 400-7746